Herbert D. Hamm, J.
This is a proceeding under article 78 of the Civil Practice Act questioning the validity of an order of the Commissioner of Education creating an enlarged district and purportedly made pursuant to section 1526 of the Education Law. The districts comprising the enlarged district appear below.

Subdivisions 1 and 4 of section 1526 of the Education Law provide:
‘‘1. The commissioner of education is hereby authorized and empowered to create enlarged city school districts by consolidation of city school districts of cities of less than one hundred twenty-five thousand inhabitants with such area or areas contiguous to such city school districts as, in his discretion, are suitable for the establishment of enlarged city school systems, and to fix, determine and define the boundaries of such enlarged districts as provided in this section.
“4. No such area or areas laid out by order of the commissioner shall be consolidated with such city school district until a majority of the qualified voters of such area or areas have adopted a proposition to consolidate such area or areas with the city school district, as provided in this section, and until the board of education of the city school district has consented to such consolidation by resolution duly adopted and has transmitted a certified copy of such resolution to the-commissioner.”
The commissioner’s order was:
“ It appearing that the districts hereinafter prescribed form a contiguous area suitable for the establishment of an enlarged *990 city school system and such establishment being for the best educational interests of the community.
“Under and pursuant to the provisions of section 1526 of the Education Law, the area consisting of Union Free School Districts Nos. 8 and 11 of the Town of Newburgh, Union Free School District No. 1 of the Town of New Windsor, and Common School Districts Nos. 1, 3, 4, 5 and 9 of the Town of Newburgh, Common School District No. 5 of the Town of New Windsor and Common School District No. 3 of the Towns of New Windsor and Cornwall, all of said union free and common school districts being in the County of Orange and State of New York, is hereby laid out for consolidation with the City School District of the City of Newburgh.”
The petitioners are taxpayers and qualified voters of Common School District 5 of the Town of Newburgh and three are trustees. District 5 of the Town of Newburgh is not contiguous to the City School District of the City of Newburgh. But the districts mentioned in the commissioner’s order form an uninterrupted area, which area in totality is contiguous to the City of Newburgh district. The petitioners contend that only districts contiguous to a city school district are within the purview of section 1526.
In 1951 section 1524, then section 1531, of the Education Law was amended by adding the following language: ‘ ‘ provided, however, that where several school districts are contiguous to each other and at least one of such school districts is contiguous to such city school district, such vote may be taken in each of such school districts at the same time, and if the proposition to consolidate is adopted by a majority vote in each such district, and upon the consent of the city school district board of education, the commissioner of education may include each such district in one order of consolidation; provided, further, however, that if the proposition to consolidate is not adopted by a majority vote in each such district, but is so adopted in one or more of such districts, upon the consent of the city school district board of education, the commissioner may include in one order of consolidation only such district or districts as, either singly or as a group, are contiguous to such city school district. ” Section 1526 is a later statute. It seems to have been adopted to permit majority vote by area rather than by individual districts. On the argument the petitioners stated that, if the area laid out for consolidation had been described in the respondent’s order by metes and bounds of the exterior of the area as a whole, the order would have been valid. I think the commissioner’s description of the area by naming the districts *991 within it is adequate and compliant with the statute. (The validity of the statute has been determined [Janowsky v. Parsons, 285 App. Div. 601] and is not in issue.)
But the petitioners further contend that the commissioner’s action was arbitrary and that there are factual issues requiring a hearing at Special Term. “ In an appropriate case, in a proceeding in the nature of mandamus, the court may direct a hearing to be held (Civ. Prac. Act, § 1295; Matter of Arcuri v. Macduff, 286 App. Div. 17, and the cases there cited).” (Matter of O’Brien v. Commissioner of Educ. of State of N. Y., 3 A D 2d 321, 325, appeal dismissed 4 N Y 2d 140.) The petition and supporting affidavits allege that there are 147 qualified voters in district 5, that there are 72 taxpayers in the district, that 137 of 147 qualified voters in the district filed a petition with the commissioner requesting annexation to the adjoining Marlboro Central School District, that on April 15, 1958, the Board of Education of the Marlboro Central School District unanimously voted to accept annexation of district 5 if ordered by the commissioner, that at a special meeting of the qualified voters of district 5 held on May 28, 1958, 91 of the 98 qualified voters attending voted in favor of annexation to Marlboro and that this action of the special meeting of district 5 was communicated to the commissioner. The petition goes on to state that the commissioner has arbitrarily, capriciously and without reason failed and neglected to promulgate an order providing for the annexation of Roseton Common School District 5, Town of Newburgh, Orange County, New York, to Central School District 1, Town of Marlboro, Ulster County, New York. The answer admits that no order has been promulgated and denies the conclusory allegations of arbitrariness and caprice. The petition further contains two paragraphs numbered 15. The second paragraph numbered 15, which is denied, alleges: “ That the action of the aforesaid Respondent, james e. alleh, jr. as Commissioner of Education of the State of New York in promulgating the aforesaid order of consolidation was not only illegal and unauthorized and contrary to the relevant provisions of law, but it was also arbitrary, capricious and contrary to the wishes and best interests of the qualified voters of Roseton Common School District #5 and the school children residing in said district.” There are no other allegations of the petition purporting to raise the factual issue that the area laid out was not “ suitable ”.
The petitioners have submitted three affidavits, all by the chairman of the board of trustees of district 5, one of the petitioners herein. It appears from the first affidavit, -which is *992 annexed to the petition, that district 5 has a school population of 71, 26 junior and senior high school students and 45 elementary pupils, that 19 of the high school students attend Newburgh city school, that 7 of the junior and senior high school students attend school in the adjoining Marlboro Central School District, that 3 of the elementary school pupils attend a parochial school and that 42 elementary school pupils attend school in district 5. There is also a subsequent affidavit by the same petitioner that 6 elemenary school pupils attend a Marlboro school, that high school and elementary school pupils are accepted in Marlboro without the payment of tuition and that, as to the high school pupils attending the Newburgh city school, district 5 pays the tuition charge. District 5, of course, has no high school.
The following facts further appear from the petitioners’ affidavits. The school population of the area to be consolidated is approximately 8,425. The assessed valuation of district 5 is about 28% of the assessed valuation of the 10-district area sought to be annexed. District 5 is and has been ineligible for State aid. District 5 has no bonded indebtedness whereas the bonded indebtedness of the nine other school districts within the area and of the school district of the City of Newburgh is $7,617,760. The Master Plan for School District Reorganization for the State of New York (Legislative Document No. 25 of 1947, pp. 570, 821) listed district 5 for annexation to the Marlboro Central School District. For the purposes of this proceeding I accept as accurate all of the afore-mentioned factual allegations contained in the petitioners’ affidavits as well as the previously mentioned factual allegations of the petition excluding, of course, the conclusory statements of the petition.
No reply has been served to the commissioner’s answer as required (Civ. Prac. Act, § 1292; Matter of Bering v. Patterson, 2 A D 2d 820; Matter of Restivo v. Degnan, 191 Misc. 642, 646; Moreland v. Areson, 22 N. Y. S. 2d 309, 312).
It appears from the commissioner ’ affidavit and the affidavit of the Chief of the Bureau of Rural Administrative Services in support of the answer that, because of the recommendations of the Master Plan referred to by the petitioners, the commissioner made an order dissolving district 5 and annexing it to the Marlboro Central School District but that on July 2,1952, the voters of district 5 rejected this annexation by a vote of 109 to 17. Further facts appearing in those affidavits follow. The order of annexation remained open until the Fall of 1957 and could have been reactivated by petition (Education Law, % 1803, subd. 10) during that time. In the Fall of 1957 the commissioner rescinded the order because of studies which bad *993 been made. In 1954 and 1956 sessions lasting for two days were held in Albany to plan a consolidation program. District 5 was represented at the 1954 session but did not send a representative to the 1956 session. The program of education proposed for the area under consideration included a highly diversified high school program and a highly efficient pupil-teacher ratio in both high school and elementary schools. A proposal for a separate central school district adjacent to the city was discussed and rejected because such an organization would have required construction of a new high school very near the city limits resulting necessarily in duplication of facilities and unnecessary expense for the suburban area. The financial aspects of the proposal projected were revised at a later session in 1956 and again in 1957. On April 8, 1958, a petition signed by 4,627 of an estimated total of 7,555 qualified voters of the outside area was filed with the commissioner. The investigations of the commissioner disclosed that consolidation as projected would stabilize the situation so that long-range plans could be made for the improvement of the program and for construction of needed and necessary buildings, that rejection of consolidation would create generally high taxes and that Newburgh was the social and economic nucleus for the residents of district 5 as well as for the other districts in the area. The Chief of the Bureau found it desirable that the voters in the outside area should have a voice in the conduct of high school matters and determined that the cost of education of all the children of the enlarged district would be equalized as among all the districts. Under the proposed enlarged city district a broader and more diversified program will be provided for the students from district 5, particularly in the high school. The Newburgh high school teaches five languages and Marlboro teaches three. The Newburgh schools have ten teachers in business and commercial courses, both vocational and nonvocational, while Marlboro has only one such teacher. The New-burgh system at the senior high school has six teachers of industrial arts, teaching such subjects as printing, metalworking, woodworking, electricity and auto mechanics while the combined junior and senior high school at Marlboro has only one teacher of industrial arts. In science and mathematics all classes in the Newburgh schools are multiple classes making instruction possible on various levels of knowledge. The City Of Newburgh over the past 20 years has spent large sums of money for new school buildings and facilities and has been housing nearly all of the high school students of district 5 and is well able to accommodate them. The distance between the center of district *994 5 and Marlboro is approximately the same as that between the center of district 5 and Newburgh. The commissioner is required to keep up to date the Master Plan previously mentioned (Education Law, § 314, as added by L. 1956, ch. 723) and to continue the investigations, studies and reviews of the Joint Legislative Committee. All of the foregoing appears in support of the affirmative defense in the respondent’s answer.
No evidence has been submitted that the commissioner in finding the area “ suitable ”, as required by the statute, acted, as alleged, contrary to the ‘ ‘ best interests of the qualified voters of Boseton Common School District #5 and the school children residing in said district ”. On the contrary the proof establishes that the enlarged district will result in improved educational opportunities for the children. It does not follow that increased taxes are contrary to the “ best interests of the qualified voters ” when coupled with better education facilities for the school children. It is the greatest good of all and not the exclusive interests of a segment of the taxpaying population which the commissioner is to consider. The commissioner may not be held to be arbitrary in attempting to achieve the best education for all the children at the lowest possible cost although this results in substantially increased taxes to the taxpayers of one of the districts embraced within the plan.
In Matter of Board of Educ. of Union Free School Dist. 3 of Town of Oyster Bay v. Allen (6 A D 2d 316) decided July 31, 1958, the commissioner’s statutory duty under subdivision 2 of section 1801 of the Education.Law required that he “ include only territory of suitable size conveniently located for the attendance of pupils and having a sufficient number of pupils for the establishment of a central school.” In this case the issue, as properly contended by the petitioners, is whether the area in the discretion of the commissioner is ‘ ‘ suitable ’ ’ (Education Law, § 1526, subd. 1, supra). In the Oyster Bay case, as here in district 5, public sentiment in district 3 of Oyster Bay was very strongly against the establishment of a central district which would include district 3. There is one difference of some significance between the two eases. The pupils in district 3 of Oyster Bay attended private schools after completion of courses in the elementary grades and the district required no high school facilities; here high school pupils of district 5 require public school education in high school courses and this, as mentioned before, is furnished with few exceptions by the Newburgh city school.^ In discussing convenience in the Oyster Bay case Mr. Justice Bergaw had *995 occasion to write (]> 323): “It is further argued that convenience is not promoted by including Brookville [district 3] in the district; but this seems to us to be a question of sound administrative judgment and a question which the commissioner surely is more competent to decide than the court. We are not able to hold, surely, that his determination is arbitrary in this respect.” The view taken by Justice Bergax seems equally apposite to the issue of suitability sought to be raised by the petitioners herein. Of course, it is not contended that the commissioner may abuse his discretion but it may be noted that the statute (Education Law, § 1526, subd. 1) authorizes the commissioner to ‘ ‘ create enlarged city school districts by consolidation of * * * such area or areas * * * as, in his discretion [emphasis supplied], are suitable ”.
The chairman of the board of trustees of district 5 quite candidly states: 1 ‘ Actually the preference of the taxpayers and voters of the Roseton school district is to maintain the status quo and to refrain from joining either the proposed Newburgh city enlarged district or the Marlboro Central School district.” For approximately five years district 5 had an opportunity to become annexed to Marlboro and this option the voters promptly and overwhelmingly rejected and thereafter failed to take any affirmative action. After the studies made by the commissioner and the facts submitted I cannot substitute my judgment and decide that the commissioner was arbitrary in the circumstances and in the exercise of his discretion in concluding the enlarged Newburgh district was suitable. In order to be entitled to a hearing the petitioners must demonstrate ‘ ‘ that there is a triable issue of fact, the resolution of which in his [their] favor would leave no rational basis for the administrative decision.” (Matter of O’Brien v. Commissioner of Educ. of State of N. Y., 3 A D 2d 321, 325, appeal dismissed 4 N Y 2d 140, supra.) The petitioners have failed to demonstrate such an issue in this ease.
The petitioners also claim that, as district 5 has adopted a budget for the school year of July 1, 1958, to June 30, 1959, there will be a duplication of budgets and taxes and hence confusion as to whether the board of trustees of district 5 or the board of education of the enlarged school district will be legally authorized to conduct school affairs. If there is a favorable vote, the commissioner will fix the effective date of consolidation (Education Law, § 1526, subd. 15). In the unlikely event that July 1, 1959, is not determined to be the date of consolidation, subdivision 17 of section 1526 makes *996 provision for cases where a consolidation order becomes effective on a date other than July 1. No problem is presented.
The petition is dismissed. Submit order to Troy on three days7 notice. The papers in this proceeding will be forwarded with the signed order.